# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **PATRICIA TAYLOR,** | **Case No.** _____ |
| **Plaintiff,**<br>v. | **JURY TRIAL DEMANDED** |
| **WILSHIRE OPERATOR LLC,**<br>Serve:<br>FILE RIGHT RA SERVICES INC.<br>4607 Shrewsbury Ave Ste E<br>Saint Louis, MO 63119-2817 | |
| **ASHER MARX,**<br>Serve:<br>1809 New Hampshire Ave<br>Toms River, NJ 08755-1313 | |
| **and** | |
| **JACQUES WOLF**<br>Serve:<br>10 Grandview Dr<br>Lakewood, NJ 08701-3881 | |
| **Defendants.** | |

1

# COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Patricia Taylor, by and through undersigned counsel, and submits this Complaint for Damages against the above-named Defendants, and in further support states and alleges as follows:

## PLAINTIFF

1. Plaintiff Patricia Taylor ("Resident"), an 83-year-old woman, sustained an avoidable injury, a fractured left femur, on or about May 20, 2024, while a resident of Wilshire at Lakewood Rehab Center, as a result of being negligently handled and repositioned by facility staff.

2. Resident survived her injuries and brings this action individually to recover for her own personal injuries, including the conscious pain and suffering she endured as a result of Defendants' conduct.

3. Plaintiff Patricia Taylor is an adult who resides in Kansas City, Missouri, and who, at all times relevant, has been a citizen of the State of Missouri.

## DEFENDANTS

4. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

## Wilshire Operator LLC

5. At all times relevant, Wilshire Operator LLC was a Missouri limited liability company that owned, operated, managed, maintained, controlled, and staffed Wilshire at Lakewood Rehab Center, located at 600 NE Meadowview Drive, Lee's Summit, Missouri 64064 (CMS Certification Number 265700).

6. As such, Wilshire Operator LLC was engaged in providing skilled-nursing and ancillary medical services to persons requiring such services, including Resident.

7. Consequently, Wilshire Operator LLC owed a duty to Resident to use reasonable care for Resident's safety and to provide care that met the applicable standards while Resident was under its care and supervision.

8. For purposes of 28 U.S.C. § 1332, the citizenship of Wilshire Operator LLC is that of each of its members. Upon information and belief, the members of Wilshire Operator LLC are citizens of New Jersey and Delaware, and no member is a citizen of the State of Missouri. Wilshire Operator LLC is therefore not a citizen of Missouri.

## Asher Marx

9. At all times relevant, Defendant Asher Marx was a natural person who held operational and managerial control over Wilshire Operator LLC and Wilshire at Lakewood Rehab Center, served as a corporate director, and held an indirect ownership interest in the operator, as reflected in the facility's federal ownership disclosures filed with the Centers for Medicare & Medicaid Services.

3

10. Asher Marx, and/or individuals or entities acting on his behalf, operated, managed, maintained, controlled, and exercised final authority over the operational and financial decisions of Wilshire at Lakewood Rehab Center.

11. It was Asher Marx's intention to reduce operating expenses at Wilshire at Lakewood Rehab Center, including through the reduction of labor and staffing, and these decisions had a direct impact on the care provided to all residents, including Resident.

12. Consequently, Asher Marx owed a duty to Resident to use reasonable care for Resident's safety while Resident was under his care, supervision, and operational control.

13. Defendant Asher Marx is a resident and citizen of the State of New Jersey, domiciled in New Jersey, and is therefore not a citizen of the State of Missouri.

**Jacques Wolf**

14. At all times relevant, Defendant Jacques Wolf was a natural person who held operational and managerial control over Wilshire Operator LLC and Wilshire at Lakewood Rehab Center, served as a corporate director, and held an indirect ownership interest in the operator, as reflected in the facility's federal ownership disclosures filed with the Centers for Medicare & Medicaid Services.

15. Jacques Wolf, and/or individuals or entities acting on his behalf, operated, managed, maintained, controlled, and exercised final authority over the operational and financial decisions of Wilshire at Lakewood Rehab Center.

4

16. It was Jacques Wolf's intention to reduce operating expenses at Wilshire at Lakewood Rehab Center, including through the reduction of labor and staffing, and these decisions had a direct impact on the care provided to all residents, including Resident.

17. Consequently, Jacques Wolf owed a duty to Resident to use reasonable care for Resident's safety while Resident was under his care, supervision, and operational control.

18. Defendant Jacques Wolf is a resident and citizen of the State of New Jersey, domiciled in New Jersey, and is therefore not a citizen of the State of Missouri.

**DEFENDANTS' JOINT ENTERPRISE/VENTURE**

19. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

20. Defendants Wilshire Operator LLC, Asher Marx, and Jacques Wolf (the "Joint Venture Defendants") were engaged in a joint venture and/or joint enterprise in the operation of Wilshire at Lakewood Rehab Center.

21. The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate Wilshire at Lakewood Rehab Center, a Missouri-licensed skilled-nursing facility.

22. The Joint Venture Defendants had a common purpose to operate Wilshire at Lakewood Rehab Center.

23. The Joint Venture Defendants had a community of pecuniary interest in the operation of Wilshire at Lakewood Rehab Center.

24. The Joint Venture Defendants had an equal right to a voice in the direction of the operation of Wilshire at Lakewood Rehab Center.

5

25. There has at all relevant times been a close relationship among the Joint Venture Defendants.

26. Because of the joint venture/enterprise, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for Resident's safety while Resident was under their care and supervision.

## JURISDICTION AND VENUE

27. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

28. Defendants Asher Marx and Jacques Wolf are citizens of New Jersey. Upon information and belief, the members of Wilshire Operator LLC are citizens of New Jersey and Delaware, and no member is a citizen of Missouri; Wilshire Operator LLC is therefore a citizen of New Jersey and Delaware.

29. Plaintiff is a citizen of Missouri.

30. Therefore, Plaintiff brings the claims in this Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

31. This Court has personal jurisdiction over each Defendant, and, pursuant to RSMo § 506.500, each Defendant purposefully availed himself or itself of the protections and benefits of the laws of Missouri by owning, operating, managing, and controlling a Missouri skilled-nursing facility and by committing tortious acts within the State of Missouri.

32. A substantial part of the events and omissions giving rise to the claims described in this Complaint occurred in Missouri, within the Western Division of this District, thereby making venue proper under 28 U.S.C. § 1391(b)(2).

## AGENCY

33. The acts and omissions described herein were performed by the agents, representatives, servants, and employees of Defendants, who were acting within the course and scope of their agency and/or employment with Defendants.

34. Defendants are therefore vicariously liable for the acts and omissions of their agents, representatives, servants, and employees under the doctrine of respondeat superior.

## FACTUAL BACKGROUND

35. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

### *Defendants' Treatment of Resident*

36. On or about May 13, 2024, Resident was admitted to Wilshire at Lakewood Rehab Center for skilled-nursing care because she could no longer be cared for at home. Resident was an 83-year-old woman who was alert but bedridden, had an ostomy, suffered from arthritis and chronic pain, and was wholly dependent on facility staff for transfers, turning, repositioning, and incontinence and ostomy care.

37. As a dependent resident, Resident required facility staff to use safe transfer and repositioning technique — including proper body mechanics, sufficient personnel, and appropriate assistive or lift equipment — to move and turn her in bed without injury. Facility records reflect that Resident was assessed as high-risk.

38. On or about May 20, 2024, while two facility staff members were turning and repositioning Resident in bed to provide care, one staff member negligently placed her full body weight upon Resident. Resident immediately suffered severe pain. This negligent handling caused or directly contributed to cause a fracture of Resident's left femur.

39. Facility staff failed to use proper transfer, turning, and repositioning technique, failed to use proper body mechanics, and failed to use sufficient personnel and appropriate assistive or lift equipment when handling a known dependent, high-risk resident.

40. Resident remained in severe pain following the handling event. Upon information and belief, when staff returned the following day to provide care, the care was refused because of Resident's pain.

41. From the time of the injury forward, Resident complained of, and staff documented, severe left hip and left leg pain; the facility's own records reflect that Resident's pain was "uncontrolled."

42. Notwithstanding Resident's severe and uncontrolled pain following the handling event, no diagnostic imaging of the hip was obtained until May 22, 2024. The May 22, 2024 x-ray revealed a fracture of the left proximal femur.

43. The facility's records reflect that Resident "denie[d] falling," and the chart contains no incident report, no documentation of the handling event, and no root-cause analysis for Resident's fracture — a failure to investigate, document, and report an in-facility injury to a dependent resident.

44. After the fracture was identified, facility records reflect a recommendation to send Resident to the hospital for further evaluation, including possible surgery; Resident was not transferred to the University of Kansas Medical Center until on or about May 23, 2024, delaying definitive orthopedic evaluation and treatment of a painful femur fracture in an elderly woman. Resident was ultimately determined not to be a surgical candidate.

45. Upon information and belief, Wilshire Operator LLC staff failed to create and implement an adequate, individualized Care Plan to safely transfer, turn, reposition, and protect a known dependent, high-risk resident from injury.

46. Upon information and belief, in connection with Resident's care, Wilshire Operator LLC staff failed to do any of the following:

   a. Safely transfer, turn, and reposition Resident using proper technique, proper body mechanics, sufficient personnel, and appropriate assistive or lift equipment;

   b. Implement and provide the appropriate interventions and supervision to protect a dependent, high-risk resident from injury during care;

   c. Monitor and evaluate Resident's Care Plan to determine whether the interventions prescribed were adequate and were being followed; and

   d. Timely assess, document, investigate, and respond to Resident's severe pain and the in-facility injury.

**Undercapitalization/Underfunding at Wilshire at Lakewood Rehab Center**

47. Asher Marx, Jacques Wolf, and Wilshire Operator LLC had a duty to provide adequate financial resources to Wilshire at Lakewood Rehab Center to ensure that the facility could meet the assessed needs of its residents, including Resident.

48. Asher Marx, Jacques Wolf, and Wilshire Operator LLC had a duty to provide sufficient and qualified staff at Wilshire at Lakewood Rehab Center to ensure that residents' needs were met, including the need for safe handling and repositioning, supervision, pain assessment, and timely diagnosis and treatment.

49. Upon information and belief, Wilshire at Lakewood Rehab Center had no autonomy to decide its own financial course, including no authority over its own staffing budget and expenditures.

50. Upon information and belief, transactions and operational decisions directed by Asher Marx and Jacques Wolf left Wilshire at Lakewood Rehab Center undercapitalized and understaffed, directly affecting the care available to residents, including Resident.

**LEGAL BASIS FOR ASHER MARX'S AND JACQUES WOLF'S LIABILITY**

**Joint Venture/Enterprise**

51. Asher Marx and Jacques Wolf are collectively referred to herein as the "Controlling Defendants."

52. The Controlling Defendants directed, operated, and managed the day-to-day functions of their skilled-nursing facilities — including Wilshire at Lakewood Rehab Center — by developing and implementing policies, practices, and procedures affecting all facets of Wilshire at Lakewood Rehab Center, including resident care.

53. These policies manipulate and control the physical and financial resources of, and prohibit decision-making at, the Wilshire at Lakewood Rehab Center level.

54. This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and, most importantly, how much staff is available to provide resident care and how well trained and supervised that staff is to meet the needs of the residents.

55. The Controlling Defendants affirmatively chose and decided to establish such operations and demanded that they be implemented.

56. Upon information and belief, such operations included the following dangerous policies and practices: (a) the aggressive recruitment and admission of high-acuity patients to increase the patient census when Defendants had already chosen to understaff Wilshire at Lakewood Rehab Center and to maintain a staff that was not qualified or competent to provide the care required by state law, regulations, and the minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualifications and care capability of Wilshire at Lakewood Rehab Center's staff.

57. The Controlling Defendants consciously chose not to implement safety policies, procedures, and systems that would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment and care prescribed by a physician were provided in accordance with state laws and professional standards.

58. The Controlling Defendants conducted themselves in a manner that indicates a joint venture/enterprise:

   a. a shared interest in the operation and management of skilled-nursing facilities;

   b. express and implied agreements among them to share in the profits and losses of such venture/enterprise; and

   c. overt actions taken showing their cooperation in furthering the venture/enterprise of operating and managing skilled-nursing facilities.

59. Missouri law recognizes a joint venture/enterprise where the parties alleged to be partners share a common interest in the property or activity of the joint venture; maintain agreements, express or implied, to share in the profits or losses of the venture/enterprise; and engage in actions or conduct showing cooperation in the project of the venture/enterprise.

60. The Controlling Defendants and Wilshire Operator LLC maintain agreements to share in the profits or losses of the operation of the skilled-nursing facilities described herein, and operate daily in a manner evincing conduct that indicates their cooperation in the venture of operating and managing skilled-nursing facilities for profit.

61. The Controlling Defendants and Wilshire Operator LLC took direct, overt, and specific actions to further the interest of the joint enterprise.

62. These actions were taken through a joint venture/enterprise or through the Controlling Defendants' and Wilshire Operator LLC's officers, directors, managers, and/or employees.

63. The Controlling Defendants had an equal right to share in the profits of, and to bear liability for, the joint venture/enterprise.

64. Further, because the Controlling Defendants and Wilshire Operator LLC were dominated by one another, these parties had an equal right to direct or control their venture, as well as to direct or control the operation and management of Wilshire at Lakewood Rehab Center.

## Direct Participation/Individual Actions

65. At all times material to this lawsuit, the Controlling Defendants were engaged in the business of managing, owning, and operating a network of skilled-nursing facilities throughout Missouri and the country. One such facility was Wilshire at Lakewood Rehab Center, where Resident was admitted for care and treatment.

66. At all times material, the Controlling Defendants were fully aware that the delivery of essential care services in each of their skilled-nursing facilities — including Wilshire at Lakewood Rehab Center — hinged upon three fundamental fiscal and operational policies dictated by their own choices: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the facilities; and (3) payor mix.

67. At all times material, the Controlling Defendants made critical operational decisions and choices that manipulated and directly impacted Wilshire at Lakewood Rehab Center's revenues and expenditures. More particularly, the Controlling Defendants determined:

   a. the number of staff allowed to work in their chain of skilled-nursing facilities, including Wilshire at Lakewood Rehab Center;

   b. the expenditures for staffing at the skilled-nursing facilities, including Wilshire at Lakewood Rehab Center;

   c. the revenue targets for each skilled-nursing facility, including Wilshire at Lakewood Rehab Center;

d. the payor mix and census targets for each skilled-nursing facility, including Wilshire at Lakewood Rehab Center; and

e. patient recruitment programs and discharge practices at each skilled-nursing facility, including Wilshire at Lakewood Rehab Center.

68. All cash-management functions, revenues, and expenditure decisions at the skilled-nursing-facility level — including Wilshire at Lakewood Rehab Center — were tightly managed, directed, and supervised by the Controlling Defendants.

69. It was the choices made by the Controlling Defendants that directly fixed the circumstances in the facilities and the level of care that could be, and was, provided at the homes, including Wilshire at Lakewood Rehab Center.

70. The Controlling Defendants formulated, established, and mandated the application and implementation of the policies regarding staffing levels and expenditures, census levels, and payor mix.

71. The census edicts, marketing and admission practices, and resident-discharge policies designed and mandated by the Controlling Defendants were implemented, and such application was carefully supervised and enforced.

72. Following the mandates, Wilshire at Lakewood Rehab Center functioned in accordance with them — filling empty beds, recruiting high-acuity patients, and maintaining a census level and staffing level established and enforced as the Controlling Defendants deemed appropriate.

73. Such manipulation by the Controlling Defendants as to staffing and census was motivated by the financial needs of the Controlling Defendants and Wilshire Operator LLC, as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

74. Instead of abiding by their duty to care for the residents, the Controlling Defendants chose to be guided by financial motivation, which was simply to increase revenues while restricting and/or reducing expenses.

75. The Controlling Defendants therefore directly participated in a continuing course of negligent conduct, requiring Wilshire at Lakewood Rehab Center to recruit and retain heavier-care, higher-pay residents even though the needs of the patient population far exceeded the capacity of the staff.

76. At the same time, the Controlling Defendants chose to design, create, implement, and enforce operational budgets at Wilshire at Lakewood Rehab Center that dictated the level of care that could be provided and therefore deprived residents of care, creating widespread neglect.

77. In so doing, the Controlling Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed skilled-nursing facility — in this case Wilshire at Lakewood Rehab Center — by the State of Missouri.

### Corporate Malfeasance

78. The Controlling Defendants consciously chose not to implement safety policies, procedures, and systems that would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment and care prescribed by a physician were provided in accordance with state laws and professional standards.

79. Accordingly, the Controlling Defendants, by their operational choices and decision-making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

80. These choices to establish and implement such policies, and the conscious decision not to implement corrective actions or procedures, disregarded the duties that the State of Missouri and the federal government imposed upon the Controlling Defendants and Wilshire Operator LLC.

81. Because the staff were below necessary levels, and because the staff who were present were not properly qualified or trained, the residents at Wilshire at Lakewood Rehab Center, including Resident, failed to receive even the most basic care required to prevent catastrophic injury. This negligence and the resulting injuries ultimately led to and caused Resident's injuries as described above.

82. During Resident's residency at Wilshire at Lakewood Rehab Center, Resident sustained physical injuries, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Controlling Defendants in operating Wilshire at Lakewood Rehab Center.

83. During Resident's residency at Wilshire at Lakewood Rehab Center, the Controlling Defendants negligently failed to provide, hire, supervise, and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and, because of this failure, Resident suffered neglect, severe personal injuries, conscious pain and suffering, and a deterioration of Resident's physical condition as further described above.

84. The Controlling Defendants manage, operate, and direct the day-to-day operations of Wilshire at Lakewood Rehab Center, and are liable for this direct involvement in the operations of the facility. The Controlling Defendants are therefore liable to Plaintiff for the neglect of and injuries to Resident.

16

85. Wilshire Operator LLC and the Controlling Defendants have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

   a. chosen to disregard the duties and responsibilities that Wilshire Operator LLC, as a licensed skilled-nursing facility, owed to the State of Missouri and its residents;

   b. created the dangerous conditions described herein by interfering with and causing Wilshire Operator LLC to violate the Missouri statutes, laws, and minimum regulations governing the operation of the facility;

   c. superseded the statutory rights and duties owed to skilled-nursing-facility residents by designing and mandating dangerous directives, policies, management, and day-to-day operation of Wilshire Operator LLC;

   d. caused the harm complained of herein; and

   e. chosen to disregard the contractual obligations owed to the State of Missouri and the federal government to properly care for the residents in exchange for the payment of funds for such care.

### COUNT I — Negligence (All Defendants)

86. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

87. At all times material hereto, Resident was in a defenseless and dependent condition.

88. As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for her safety, protection, care, and treatment.

89. At the time of the negligent acts and omissions complained of herein, and at all other relevant times, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

90. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled-nursing facility.

91. These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of, all residents, including Resident.

92. These duties required Defendants to have sufficient and qualified staff at Wilshire at Lakewood Rehab Center to ensure the proper care for, and treatment of, all residents, including Resident.

93. These duties required Defendants to ensure that Wilshire at Lakewood Rehab Center's nurses and other staff were properly educated and trained regarding the care for, and treatment of, all residents, including Resident.

94. These duties required Defendants to ensure that Wilshire at Lakewood Rehab Center was properly capitalized to ensure the proper care for, and treatment of, all residents, including Resident.

95. Specifically, in their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were negligent in one or more of the following respects:

   a. Negligently placing full body weight upon a dependent resident while turning and repositioning her, causing or contributing to cause a fractured left femur;

   b. Failing to safely transfer, turn, and reposition Resident using proper technique and proper body mechanics;

   c. Failing to use sufficient personnel and appropriate assistive or lift equipment when handling a dependent, high-risk resident;

   d. Failing to properly train and supervise the employees, agents, and servants responsible for transferring, turning, and repositioning Resident;

18

e. Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition, including her severe and uncontrolled hip and leg pain;

f. Failing to timely assess, investigate, document, and report the in-facility injury to Resident;

g. Failing to timely order and obtain indicated diagnostic imaging of Resident's hip following her injury;

h. Failing to timely report Resident's change in condition to a physician;

i. Failing to carry out the instructions of Resident's physician;

j. Failing to timely transfer Resident to a facility that could provide adequate care for her fracture;

k. Failing to provide adequate nursing staff to ensure Resident's protective oversight, supervision, and safe handling;

l. Failing to enact and carry out an adequate Care Plan to safely handle and protect a dependent, high-risk resident from injury;

m. Failing to have and implement appropriate policies and procedures regarding the safe transfer, turning, and repositioning of dependent residents;

n. Failing to ensure that Wilshire at Lakewood Rehab Center was properly capitalized and staffed; and

o. Failing to perform and measure up to the requisite standards of care required and observed by health-care providers.

96. As a direct and proximate result of the individual and collective acts of negligence of Defendants described above, Resident was harmed and suffered injuries and damages, including a fractured left femur; conscious pain and suffering; mental anguish; disability; disfigurement; loss of enjoyment of life; and past and future medical and related expenses.

**WHEREFORE**, Plaintiff Patricia Taylor prays for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00 that is fair and reasonable, together with her costs, pre- and post-judgment interest as allowed by law, and such other and further relief as the Court deems just and proper.

### COUNT II — Alter Ego (Against Asher Marx and Jacques Wolf)

97. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

98. Wilshire Operator LLC (the "Company") is so dominated by Asher Marx and Jacques Wolf that the Company is a mere instrument of the Controlling Defendants and is indistinct from them.

99. In fact, the Company is controlled and influenced by the Controlling Defendants in that the Controlling Defendants exercised complete control and domination over the Company's finances and business practices.

100. Specifically, the Controlling Defendants' complete control and domination over the Company caused the facility's undercapitalization and understaffing while Resident was at the facility.

101. The Controlling Defendants' complete control and domination over the Company caused the Company to operate at a loss during the two years preceding the negligence in this case.

102. The Controlling Defendants' complete control and domination over the Company caused the Company's liabilities to exceed its assets during the two years preceding the negligence in this case.

20

103. Specifically: (1) the Controlling Defendants own all or most of the membership and ownership interests of the Company; (2) the Controlling Defendants and the Company have common directors, managers, or officers; (3) the Controlling Defendants finance the Company; (4) the Controlling Defendants subscribe to all of the membership interests of the Company; (5) the Controlling Defendants caused the formation of the Company; (6) the facility has grossly inadequate capital; (7) the Controlling Defendants pay the salaries and other expenses or losses of the Company; (8) the Controlling Defendants use the property of the Company as their own; and (9) the managers and executives of the Company do not act independently in the interest of the Company but take their orders from the Controlling Defendants in the latter's interest.

104. Thus, the Controlling Defendants used the corporate cloak of the Company as a subterfuge to defeat public convenience, to justify a wrong, and/or to perpetrate a fraud, in that the Controlling Defendants' complete control and domination of the Company depleted the Company's assets, thereby making it unable to pay a judgment resulting from its care of residents, including Resident.

105. This undercapitalization and understaffing violated Wilshire Operator LLC's duties and the applicable standard of care owed by a skilled-nursing-facility operator or manager to the facility's residents.

106. As a direct and proximate result of the individual and collective acts of negligence of the Company — and of Asher Marx and Jacques Wolf as its alter egos — Resident was harmed and suffered injuries and damages, including a fractured left femur; conscious pain and suffering; mental anguish; disability; disfigurement; loss of enjoyment of life; and past and future medical and related expenses.

**WHEREFORE**, Plaintiff Patricia Taylor prays for judgment against Defendants Asher Marx and Jacques Wolf, jointly and severally, in an amount in excess of $75,000.00 that is fair and reasonable, together with her costs, pre- and post-judgment interest as allowed by law, and such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

STEELE LAW FIRM II, LLC

By: */s/ Jonathan Steele*
Jonathan Steele
MO#63266/KS#24852/OK#35997
Email: jonathan@nursinghomeabuselaw.com
Direct: (913) 356-9630
Office: (816) 466-5947
Fax: (913) 416-9425
nursinghomeabuselaw.com

Missouri Office
2029 Wyandotte, Suite 100
Kansas City, MO 64108

Oklahoma Office
15401 N. May Ave., Suite 1100
Edmond, OK 73013

***ATTORNEY FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026 a copy of the above and foregoing was Served on all counsel of record via the electronic filing system. I hereby certify that on May 20, 2026, a copy of the above and foregoing was served on all counsel of record via the electronic filing system.